IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

---

THE WINDY OAKS CONDOMINIUM
ASSOCIATION,

      Plaintiff,

v.                                             Civil Action No. _____

                                                JURY DEMAND

OWNERS INSURANCE
COMPANY,

      Defendant.

---

## COMPLAINT

---

COMES NOW the Plaintiff, The Windy Oaks Condominium Association, by and through counsel, and for its claims against Owners Insurance Company would respectfully state and show as follows:

### PARTIES AND JURISDICTION

1. The Windy Oaks Condominium Association (hereafter "Plaintiff") is a corporation duly formed under the condominium and business organization laws of the State of Tennessee. Plaintiff is a condominium owners' association that is governed by a Board of Directors pursuant to Tennessee law. The condominium units and associated property are located at and around 616 Turkey Nest Road, Gatlinburg, Tennessee 37738 (the "Insured Premises").

2. Owners Insurance Company ("Defendant") is an Ohio corporation with its principal place of business located at 6101 Anacapri Boulevard, Lansing, Michigan 48917 and engaged in the business of insurance in the State of Tennessee.

3. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Jurisdiction and venue are appropriate in this Court.

4. This Complaint originates as the result of the November 2016 wildfires and an associated windstorm that caused substantial insured losses to the structures located on the Insured Premises, and Defendant's failure and refusal to (a) promptly and fully pay Plaintiff's insurance claim, and (b) allow the insurance policy's appraisal clause to resolve the parties' dispute concerning the amount of the loss.

## FACTS

5. At all times relevant hereto, Plaintiff was insured pursuant to an insurance contract whereby Defendant agreed to insure the buildings located at the Insured Premises against property damage, bearing Policy No. 46-734-746-00 (the "Policy"). As relevant hereto, the Policy's term was April 18, 2016 to April 18, 2017.

6. At all times relevant hereto, the Insured Premises consisted of a residential condominium building, containing 48 residential living units.

7. The Policy provided insurance coverage for loss or damage to the building located on the Insured Premises, as well as other specific coverage as set forth in the Policy. The Policy is an "all risk" policy, which means that it provides insurance coverage for all direct physical loss to covered property unless the loss is specifically excluded or limited in the Policy.

8. The Policy's coverage for the buildings and structures on the Insured Premises was on a "guaranteed replacement cost" valuation basis, which means that coverage is provided on a replacement cost basis without deduction for depreciation.

9. Pursuant to the Policy, Plaintiff paid a premium to Defendant in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

10. On November 28, 2016, the building located on the Insured Premises were infested and damaged by the accumulation of soot, ash residue, and other wildfire debris generated as a result of the Chimney Tops 2 wildfire that struck the area, resulting in substantial direct, physical loss. The direct physical loss and damage to the building at the Insured Premises shall hereafter be referred to as the "Loss."

11. The Chimney Tops 2 wildfire started in the Chimney Tops area of the Great Smoky Mountains National Park, approximately 5.5 miles south of the City of Gatlinburg. A high wind-driven firestorm on November 28, 2016 and into November 29, 2016 pushed the wildfire, smoke, and embers into Gatlinburg and led to evacuation of most city residences and visitors, impacting over 2,500 structures, and resulting in three deaths in the city and eleven more in Sevier County. The evacuation order was lifted on December 9, 2016.

12. Conditions at the Insured Premises at the time of the firestorm included thick smoke, with extremely low visibility, twilight illumination, falling ash resembling snow, high winds (over seventy miles per hour), and flying debris. Air quality remained hazy and poor for several days after the firestorm.

13. After the wildfire, Plaintiff filed an insurance claim with Defendant. Defendant assigned a claim number of 76-620-16 to the claim.

14. While Defendant did make some minimal payments for the Loss to the Insured Premises, Defendant failed to sufficiently investigate the Loss and determine the actual and real scope of damages from the Loss.

15. Plaintiff continues to experience smoke odors and other problems as a result of the Loss.

16. As a result of the Loss, the Insured Premises were contaminated with soot, smoke residue, char, ash, and wildfire residue. The wildfire residue was not present before the Loss.

17. Plaintiff promptly reported the Loss to Defendant.

18. Plaintiff fulfilled all of the duties after the Loss that were imposed upon it by the Policy to the satisfaction of Defendant.

19. As it relates to the Loss, there is no applicable exclusion. The Loss is a compensable claim under the Policy.

20. Defendant has acknowledged that the Loss is a compensable claim and has made minimal payments on the claim that are insufficient to cover the damage to the Insured Premises caused by the Loss.

21. Despite the fact that Plaintiff has fulfilled all duties imposed upon it by Defendant and is at no fault in this matter, Defendant has wrongfully refused to fully and promptly pay Plaintiff's claim for insurance proceeds.

22. The payment(s) made by Defendant to Plaintiff were insufficient to indemnify Plaintiff for the Loss and restore the Insured Premises to pre-loss condition pursuant to the Policy.

23. Plaintiff advised Defendant that the payments made were insufficient to indemnify it for the damage to the Insured Premises from the Loss.

24. By letter dated June 26, 2017, Plaintiff advised Defendant that it was invoking the Policy's appraisal clause because of the lack of an agreement between Plaintiff and Defendant regarding the amount of the loss.

25. The Policy's appraisal clause provides as follows:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.    Pay its chosen appraiser; and
    b.    Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

26. Plaintiff selected its appraiser as required by the Policy.

27. Defendant refused to select an appraiser and move forward with the appraisal process.

28. Thereafter, Plaintiff provided Defendant with the loss valuation performed by Howarth, as Plaintiff's appraiser. This submission also included lab tests showing the presence of soot/ash/char from the Loss at the Insured Premises for which Defendant had not paid.

29. In response, Defendant asked that additional documentation be provided, as well as a proof of loss.

30. All requested information was submitted.

31. Despite this, Defendant refused to move forward with appraisal. Furthermore, Defendant neither performed any tests nor took any samples to determine the presence of soot, smoke, or ash in the locations submitted by Plaintiff.

32. Wildfire residue exists in and on the building at the Insured Premises that was not present prior to the November 2016 wildfire.

33. Defendant has not properly paid to repair, replace, clean/seal/paint, or otherwise restore numerous infested areas of the Insured Premises. Standard protocol also requires post-cleaning testing (which Defendant did not request nor pay for).

34. Defendant's decision to deny further payment, or even to allow appraisal to resolve the dispute, is unconscionable.

35. Defendant's proposed scope of work to the building did not appropriately remedy/repair the damage to the Insured Premises from the Loss, including areas which Defendant has never paid to clean, repair or restore.

36. Plaintiff has not been properly compensated for the damage to the Insured Premises. A smoke odor and other damages from the Loss are still present, and soot testing has confirmed the presence of wildfire residue in places for which Defendant has not paid to clean, treat, or properly repair.

37. Defendant refused, and still refuses, to make full payment to Plaintiff for its covered loss. Defendant refused, and still refuses, to allow the contractual appraisal process to resolve the parties' dispute concerning the amount of the loss.

38. Defendant has refused to respond to any of Plaintiff's communications for more than six months.

39. Defendant's failure and refusal to pay Plaintiff the amounts owed to it for the Loss, and Defendant's refusal to submit the dispute over the amount of loss to appraisal, is without justification, and was intentional, fraudulent, malicious and/or reckless.

40. Defendant's failure and refusal to pay the money and benefits due and owing Plaintiff under the Policy and refusal to submit the claim to appraisal has caused Plaintiff to initiate this Complaint to recover the insurance proceeds to which it is entitled.

# CAUSES OF ACTION

## Count 1 – Breach of Contract

41. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

42. The Policy issued by Defendant to Plaintiff is a binding contract and is supported by valid consideration.

43. Defendant is in total material breach of the Policy, and Defendant is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Defendant's breach of contract includes the following, without limitation: (a) Defendant's failure and refusal to pay the amounts owed to Plaintiff for the Loss under the coverages afforded by the Policy and (b) Defendant's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy.

44. As a result of Defendant's breach of contract, Plaintiff has sustained substantial compensable losses for the amounts claimed under the Policy, plus consequential damages.

45. Defendant is liable to Plaintiff for its losses.

46. Defendant's breach of contract was intentional, fraudulent, malicious, and/or reckless, therefore justifying an award of punitive damages. *See, e.g., Riad v. Erie Ins. Exchange*, 436 S.W.3d 256, 276 (Tenn. Ct. App. Oct. 31, 2013). Specifically, Defendant intentionally, fraudulently, maliciously, and/or recklessly: (1) failed to effectuate a prompt and fair settlement of Plaintiff's claim when liability was reasonably clear; (2) refused and failed to conduct a reasonable, prompt, and fair investigation concerning the issues surrounding Plaintiff's claim for insurance proceeds; (3) unjustly refused and/or failed to pay Plaintiff's claim for its own financial preservation with no reasonable or justifiable basis; (4) refused payment on Plaintiff's claim for no valid reason whatsoever; (5) failed to treat Plaintiff's interests with equal regard to its own; (6)

promised prompt action and claim-handling, but then failed to provide full payment or even any prompt communication or status reports; (7) failed and refused to pay for obvious damage caused by the Loss; (8) failed to timely investigate, scope, and estimate the Loss; (9) ignored areas of damage from the Loss for which no compensation has been paid; (10) misrepresented to Plaintiff that it had paid for all damage from the Loss when Defendant knew it had not paid for the full restoration of all affected areas; (11) refused Plaintiff's contractual right to resolve its dispute with Defendant concerning the amount of the loss in order to protect Defendant's own financial interest to the detriment of Plaintiff; (12) concealed important and material facts from Plaintiff in an effort to minimize the amount Defendant would have to pay on the claim; (13) misrepresented relevant facts and policy provisions to Plaintiff; (14) failed to adopt and implement reasonable standards for the prompt investigation and settlement of claims; (15) forced Plaintiff to file suit to enforce its rights under the Policy; and (16) such other facts and circumstances as alleged in this lawsuit and/or to be determined during discovery and which will be shown at trial. Defendant knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously ignored Plaintiff's valid claim and then denied Plaintiff's claim and withheld monies and benefits rightfully due Plaintiff.

47. Plaintiff seeks, and is entitled to, punitive damages.

**Count 2 – Statutory Bad Faith**

48. The allegations contained in the paragraphs above in this Complaint are incorporated herein by reference as if set forth verbatim.

49. Defendant's refusal and failure to pay the amounts contractually owed to Plaintiff is arbitrary and capricious and constitutes bad faith pursuant to Tenn. Code Ann. § 56-7-105 in that more than sixty (60) days have passed since a formal demand has been made on Defendant and full payment has not been made for the Loss as required pursuant to the Policy, for which the twenty-five percent (25%) statutory penalty for bad faith should be invoked.

50. The bad faith of Defendant is evidenced by the fact that, at all times material hereto, Defendant knew, or reasonably should have known that Plaintiff was justifiably relying on the money and benefits due it under the terms of the Policy and as otherwise promised and represented by Defendant, as well as the actions of Defendant as set forth in paragraph 51 below and 46 above. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing or willfully disregarding the probability of causing unjust and cruel hardship on Plaintiff, Defendant consciously refused to pay in full Plaintiff's valid claim and withheld monies and benefits rightfully due to Plaintiff.

51. Defendant's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following:

   a. Defendant's intentional failure to fully inform Plaintiff of its rights and obligations under the Policy;

   b. Defendant's intentional failure to attempt in good faith to effectuate a prompt, fair and equitable settlement of Plaintiff's claim when liability was reasonably clear;

   c. Defendant's intentional refusal to pay Plaintiff's claim in full and to otherwise honor its obligations under the Policy without conducting a reasonable investigation based on all available information;

d. Defendant's intentional refusal to fully investigate Plaintiff's claim and to obtain all available information before alleging that it had no further obligations to Plaintiff;

e. Defendant's failure to promptly provide Plaintiff with a reasonable and accurate explanation for its refusal to pay its claim in full;

f. Defendant's intentional failure to properly adjust Plaintiff's claim and to pay Plaintiff fully for its losses;

g. Defendant's intentional failure to pay all amounts due and owing to Plaintiff under the Policy with no reasonable or justifiable basis; and

h. Defendant's unjustified refusal to pay Plaintiff's claim for its own financial preservation.

52. In so acting, Defendant intended to and did injure Plaintiff in order to protect its own financial interests and should be punished via the twenty-five percent (25%) bad faith penalty authorized by statute.

WHEREFORE, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment to Plaintiff as follows:

A. For compensatory damages to Plaintiff against Defendant not to exceed $500,000;

B. For punitive damages against Defendant in an amount to be determined by the jury but not to exceed nine times the amount of compensatory damages awarded to Plaintiff or such other amount as allowed by law;

C. For specific performance of the Policy's appraisal clause;

D. For a statutory bad faith penalty of twenty-five percent (25%);

E. For all costs incurred by Plaintiff as a result of this action;

F. For pre- and post-judgment interest; and

G. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury.

    Respectfully submitted,

    GILBERT McWHERTER
    SCOTT & BOBBITT PLC


    /s/ J. Brandon McWherter
    J. BRANDON McWHERTER #21600
    bmcwherter@gilbertfirm.com
    JONATHAN L. BOBBITT #23515
    jbobbitt@gilbertfirm.com
    341 Cool Springs Blvd, Suite 230
    Franklin, TN 37067
    Telephone: (615) 354-1144

    CLINTON H. SCOTT #23008
    cscott@gilbertfirm.com
    101 North Highland
    Jackson, Tennessee 38301
    Telephone: (731) 664-1340

    *Attorneys for Plaintiff*